RECEIVED
SEP 17 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| GASPARD ONE, L.L.C., ET AL. | CIVIL ACTION NO. 07-1551 |
| VERSUS | JUDGE DOHERTY |
| BP AMERICA PRODUCTION CO., ET AL. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is an Appeal of the magistrate judge's Ruling granting plaintiffs' "Motion for Leave to File First Amended Complaint" [Doc. 55], filed by defendants BP America Production Co. ("BP") and Pan American Petroleum Corp. ("Pan American") (hereinafter, collectively, "defendants").[1] Plaintiffs Gaspard One, L.L.C. and Patricia Gaspard (hereinafter, collectively, "plaintiffs") filed a response [Doc. 59], and defendants filed a reply brief [Doc. 62]. For the following reasons, this Court AFFIRMS the ruling of the magistrate judge permitting the amendment of plaintiffs' complaint, with clarification, and REMANDS this matter to the 38th Judicial District Court for the Parish of Cameron, Louisiana.

**I.  Factual Background and Procedural History**

Plaintiffs, owners of certain immovable property located in Cameron Parish, Louisiana, filed this lawsuit alleging BP, Pan American, and the State of Louisiana through two government agencies, the Department of Environmental Quality ("DEQ") and the Louisiana Department of Natural Resources ("DNR"), collectively, contaminated plaintiffs' property with oilfield waste and failed to warn plaintiffs the disposal of hazardous materials on plaintiffs' property would be hazardous to human health and the environment. The lawsuit was filed initially in the 38th Judicial

---

[1] The magistrate judge's Memorandum Ruling appears at Doc. 50.

District Court for the Parish of Cameron, State of Louisiana on August 3, 2007. Plaintiffs' allegations in the complaint include the following:

> "Defendants, at all relevant times, *operated wells and equipment* on the property that produced waste including hazardous and toxic substances. Defendants disposed of and/or released these wastes onto the property and then failed to clean such up. Defendant abandoned the lease without removing waste, pipes, and other equipment and debris on the property." (Complaint, ¶ 3).
>
> "Defendants knowingly, willfully, wantonly, and negligently caused Plaintiffs' real and personal property to become contaminated by oil, grease, salt water, and other hazardous toxic and carcinogenic chemicals *that originated from their operations* on the leased
> property." (Complaint, ¶ 4).
>
> "Upon information and belief, Defendants *abandoned and improperly closed* an oil waste pit on the property." (Complaint, ¶ 5).
>
> "Upon information and belief, Defendants knowingly, willfully, wantonly, and negligently *performed improper cleanups on the Plaintiffs' property*, thereby spreading and burying the existing contaminants and increasing the cost of any future cleanup of the property." (Complaint, ¶ 6).
>
> "Defendants *improperly maintained equipment* resulting in spills and leaks of oil and production wastes which contaminated the soil and water on the Plaintiffs' property." (Complaint, ¶ 7).
>
> "Defendants *failed to clean up the site or to maintain the site in a prudent and business-like manner*. Defendants left abandoned pipelines, pits and other equipment on the site and left areas of the property contaminated with oilfield wastes." (Complaint, ¶ 8).
>
> "Defendants failed to warn Plaintiffs that *their disposal and discharge activities* would be hazardous to human health and the environment. Defendants concealed the hazardous nature of the materials that they allowed to enter into and onto the Plaintiffs' land."
> (Complaint, ¶ 10).
>
> "*As the holder of oil, gas, and mineral leases*, Defendants are obligated to restore the surface of the property to its original condition at the earliest reasonable time." (Complaint, ¶ 14).
>
> Defendants' conduct *in contaminating the property and failure to warn* is a breach

> of the good faith requirement in the lease and right-of-way agreements between Plaintiffs' predecessors, and Defendants, to which Plaintiffs are third party beneficiaries. Furthermore, by improperly disposing of solid and hazardous wastes on the property, defendants used the property for purposes other than those intended by the lease agreement, and as such, they are liable for all losses the Plaintiffs sustain as a result. Defendants, as obligors in bad faith, are liable for all the damages, foreseeable or not, that are a direct consequence of their failure to perform. (Complaint, ¶ 12).

(emphasis added).

On September 18, 2007, defendants BP and Pan American removed the action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §1332, contending DEQ and DNR were improperly joined and the citizenship of these entities should not be considered for purposes of removal. Plaintiffs filed a Motion to Remand [Doc. 18], alleging the instant case was improperly removed, refuting BP and Pan American's argument DEQ and DNR were improvidently joined and contending the tort claims against these defendants could only be brought in state court. On February 15, 2008, after an evidentiary hearing on the matter, the magistrate judge concluded plaintiffs did not sufficiently plead their claims against the state agencies and, therefore, failed to state valid causes of action against DEQ and DNR. Thus, the magistrate judge reasoned the joinder of the state agencies was improper and recommended to this Court that the state agency defendants be dismissed from the lawsuit [Doc. 36]. Anticipating this Court would agree with the recommendation to dismiss DEQ and DNR, the magistrate judge ruled the motion to remand should be denied, inasmuch as complete diversity jurisdiction exists without the presence of DEQ and DNR in the lawsuit.

In so ruling, the magistrate judge made clear it appeared the plaintiffs might have valid causes of action against the state agencies, to wit:

> Plaintiffs may well have a cause of action against a DEQ and the DNR. *See*

*Robichaux v. State, ex rel. Department of Health*, 952 So.2d 27, 41 (La. App. 1st Cir. 2006). However, under the fact pleadings used in state court, the factual allegations made in plaintiff's petition (which is the only thing this court can consider at this point) are insufficient to assert a valid cause of action against either DEQ or DNR. Should plaintiffs amend the complaint to state a cause of action against DEQ and DNR, then remand might well be appropriate at that time.[2]

This Court adopted the findings of the magistrate judge in his report and, noting no objections, dismissed DEQ and DNR as parties to this lawsuit by judgment dated March 31, 2008 [Doc. 40].

On April 8, 2008 – just eight days after this Court signed the judgment – plaintiffs filed a "Motion for Leave to File First Amended Complaint," seeking to add the State of Louisiana through DEQ and DNR as party defendants. The motion was held for a deficiency, which was corrected on April 16, 2008 [Docs. 43 & 44]. BP and Pan American opposed the motion for leave to amend, arguing because the plaintiffs were attempting to add non-diverse parties after removal, the court was required to consider the factors set forth in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987), and such factors favored a denial of the amendment.

In *Hensgens*, the Fifth Circuit held "when faced with an amended pleading naming a new nondiverse defendant in a removed case, [courts] should scrutinize that amendment more closely than an ordinary amendment" and should generally consider four factors to determine whether the amendment is appropriate:

> For example, the court should consider [1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment should be permitted. If it permits the amendment of the nondiverse defendant, it then must remand to the state court. If the amendment is not

---

[2] See Magistrate Judge's Memorandum Ruling on Motion to Remand, Doc. 36, at p. 5, n.1.

allowed, the federal court maintains jurisdiction.

833 F.2d at 1182.

Defendants argued the purpose of plaintiffs' proposed amendment was to defeat federal jurisdiction; plaintiffs were dilatory in seeking the amendment; plaintiffs would not be significantly injured if the amendment was not allowed; and defendants would be prejudiced should the amendment be permitted, because such amendment would require a remand of the instant case back to state court, and defendants could become embroiled in the exceptions of improper venue that would likely be filed by DEQ and DNR in that venue. Defendants argued DEQ and DNR would likely file exceptions of improper venue because East Baton Rouge Parish is the proper venue for regulatory tort claims against state agencies.

On May 22, 2008, the magistrate judge conducted oral argument on the motion by telephone. At the telephone status conference, the magistrate judge granted the motion and issued separate Reasons for Ruling [Docs. 49 & 50]. In his Reasons for Ruling, the magistrate judge held the *Hensgens* case was inapplicable, because plaintiffs named DEQ and DNR as defendants at the inception of the lawsuit in state court and these parties are not considered *new* parties for purposes of amendment.[3] The magistrate judge further observed this is not a case in which the plaintiffs are attempting to, for the first time after removal, add non-diverse defendants for the purpose of defeating diversity jurisdiction. The magistrate judge also concluded plaintiffs' motion to amend was not dilatory, considering it was filed within two weeks of this Court's judgment on the motion

---

[3] The defendants also relied on two district court cases that stand for the same principle of law. *See Campagna v. Averitt Express Inc.*, 1999 WL 386652 (E. D. La. June 10, 1999) and *Kelly v. Boeing Petroleum Services, Inc.*, 1993 WL 370615 (E.D. La. 1993).

to remand.[4] Finally, the magistrate judge addressed defendants' arguments it will be substantially prejudiced should the amendment be allowed, because this likely will lead to certain actions that could be taken in state court. Noting remand of the case could result in the possible dismissal of the state agency defendants as parties because of improper venue, which could lead to another attempt to remove, the magistrate judge stated future actions that might be taken in state court do not change the status of the case as it exists in federal court, and if the state court does, indeed, dismiss the stage agencies and removal is still timely to this Court, removal could be proper at that point. Considering the foregoing, the magistrate judge granted plaintiffs' motion to amend, allowing DEQ and DNR to be made party defendants in this matter.[5]

Defendants filed the instant appeal on June 10, 2008. In their appeal, defendants make substantially the same arguments they made before the magistrate judge, contending the magistrate judge's ruling is "clearly erroneous and/or contrary to law" because he ruled the *Hensgens* case is inapplicable. Defendants contend the *Hensgens* case is applicable and the *Hensgens* factors militate in favor of denying the amendment. After consideration of the arguments of the parties, the evidence presented, and the applicable jurisprudence, this Court concludes the result reached by the magistrate judge is not clearly erroneous and/or contrary to law, although this Court makes certain clarifications of law herein.

## II. Law and Analysis

### A. Standard of Review

With some exceptions inapplicable for purposes of this motion, a magistrate judge may hear

---

[4] This Court signed the judgment on the motion to remand and the recommendation of dismissal of DEQ and DNR on March 31, 2008. Plaintiffs filed their motion for leave to amend on August 8, 2008.

[5] The magistrate judge granted only the motion to amend, he did not address remand of the instant case to state court as suggested by *Hensgens*.

-6-

and determine any pre-trial matter pending before a district court. 28 U.S.C. §636(b)(1). Federal law affords the magistrate judge broad discretion in the resolution of non-dispositive matters. *See* Fed. R. Civ. P.72(a). With regard to a non-dispositive matter, a district court will reverse a magistrate judge's ruling only if the party challenging the decision demonstrates that the magistrate's determination was clearly erroneous or contrary to law. *Id*; *Castillo v. Frank*, 70 F.3d, 382, 385-86 (5th Cir. 1995).

### B. Law on Amendment of Pleadings

Leave to amend generally should be granted absent some justification for refusal such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). An amended pleading is "futile" if it would fail to state a claim under Rule 12(b)(6). *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir.2000). A motion for leave should not be denied, however, "unless there is a substantial reason to do so." *Leffall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir.1994).

As previously stated, the *Hensgens* case holds "when faced with an amended pleading naming a new nondiverse defendant in a removed case, [courts] should scrutinize that amendment more closely than an ordinary amendment" and should generally consider four factors to determine whether the amendment is appropriate: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities. 833 F.2d at 1182. The district court should then balance the equities and

decide whether amendment should be permitted. *Id.*

Appellants argue, the magistrate judge concluded the *Hensgens* case is not applicable because the facts of that case involved an attempt to add a *new* non-diverse defendant after removal, while the facts of the instant case involve an attempt to add non-diverse parties that were *originally named as defendants when the case was originally filed in state court but were subsequently dismissed after removal by the district court.* This Court agrees the *Hensgens* case is distinguishable from the facts of this case and, hence, is not controlling. Nevertheless, this Court concludes that, under the unique facts and circumstances of this case, the *Hensgens* case is, however, instructive as to the legal concerns at issue. The magistrate judge, it seems, believed the *Hensgens* case to be *instructive* as well, because although he stated the case does not control, he, in fact, applied at least two of the three *Hensgens* factors within his analysis. To the extent the magistrate judge applied those factors, this Court concludes he applied them properly.

### 1. Are plaintiffs attempting to defeat diversity?

With respect to the first factor, this Court agrees with the magistrate judge's finding that the instant case is not one in which it is obvious the plaintiffs are attempting to add the state agencies to defeat diversity. Indeed, the state agency defendants have been parties to this lawsuit since the inception of the suit, and plaintiffs have maintained their claims against these defendants from the beginning.

Despite the foregoing, this Court does not go so far as to say *Jackson v. Wal-Mart Stores, Inc.*, 2003 WL 22533619 (E.D. La. November 5, 2003), cited by plaintiffs, is controlling as plaintiffs allege. First, this Court is not bound by district court decisions. Furthermore, the Court concludes the *Jackson* case is distinguishable. In *Jackson*, the plaintiff initially sued both Wal-Mart and a non-

diverse Wal-Mart employee named only as Jane Doe. After the case was removed, the plaintiff learned the name of the employee and sought to amend to correctly name the employee. In holding the motion for leave should be granted, the court distinguished the *Hensgens* case by stating in *Hensgens*, "the issue was adding a defendant not contemplated as a party at the time the suit was originally filed." *Jackson*, 2003 WL 22533619 at *2.

Here, the state agencies were certainly contemplated as defendants at the time the suit was originally filed, and were in fact named as defendants at that time. In the instant case, the state agencies were dismissed after removal due to a failure to have sufficiently plead the claims against them. In contrast, in *Jackson*, the plaintiff sufficiently pled her claims against the non-diverse defendant, and that defendant was never *not* a party to the suit. Thus, in the instant case, plaintiffs do not seek to merely identify a party whose identity they previously did not know and which has been a party to the suit the entire time the suit has been pending, as was the case in *Jackson*. Consequently, the *Jackson* case - like the *Hensgens* case – is factually distinguishable.

Furthermore, as the magistrate judge pointed out, it appears that *as a matter of law*, the plaintiffs are not without an arguable claim against the state agency defendants for failure warn of the alleged property contamination under Louisiana law. *See, e.g., Robichaux v. State of Louisiana through the Department of Health and Hospitals, et al.*, 952 So.2d 27 (La. App. 1st Cir. 2006) (finding plaintiffs stated a valid actionable claim against the State of Louisiana through the Department of Health and Hospitals and the Department of Environmental Quality *for negligent failure to warn property owners of contamination to their land*), *writ denied*, 959 So. 2d 504 (La. 2007). Thus, for purposes of this motion only, considering the applicable law and the absence of argument on the part of the defendants that the claims, *as a matter of law*, can *not* be valid, under

the facts at issue, this Court cannot find the claims to be futile or, under applicable law, unavailable *as a matter of law*. Consequently, this Court concludes this case is not one in which the proposed amendment is sought in an effort to defeat diversity. Thus, the first factor weighs in favor of permitting the amendment.

### 2. Is plaintiffs' amendment dilatory?

With respect to the timeliness of plaintiff's motion to amend, this Court agrees with the magistrate judge's finding that the motion to amend was not dilatory. This Court signed the judgment on the magistrate judge's report and recommendation recommending dismissal of the state agencies and denial of the motion to remand on March 31, 2008. The plaintiffs filed their motion to amend on April 8, 2008. Although this motion was held for a deficiency that was not cured until April 16, 2008, this Court nevertheless determines such fact does not render plaintiff's actions dilatory. [Docs. 43 & 44]. Thus, the second factor weighs in favor of permitting the amendment.

### 3. Will plaintiffs be significantly injured if amendment is not allowed and which parties do the equities favor?

This Court will address the third and fourth factors together, as they are intertwined, as follows: Plaintiffs argue they will be substantially prejudiced should the amendment not be permitted, because they will be forced to litigate their case in a piecemeal fashion if they are forced to bring their claims against the state agencies in state court while prosecuting the case against the oil and gas companies in federal court. On the other hand, under the fourth factor – "any other factor bearing on the equities" – defendants argue *they* will be substantially prejudiced if the amendment is permitted, because such an amendment will require remand of this case to state court, where the state agencies are likely to raise exceptions of improper venue. Citing a long line of Louisiana jurisprudence that appears to be evolving over time, defendants contend because the claims against

the state agencies are for inaction and failure to warn, the claims against the agencies involve the agencies' "administrative" or "ministerial" duties, which requires the claims against the agencies be brought in East Baton Rouge Parish. Defendants raised this issue before the magistrate judge, who ruled potential future consequences in state court do not alter the status of the matter in this court at this time. This Court agrees and elaborates as follows.

The parties have spent many pages briefing the issue of proper venue for a lawsuit filed against a state agency. Application of the principles of these cases to the facts of this case focus on, *inter alia*, whether the alleged causes of action against the state agencies arose in Cameron Parish or East Baton Rouge Parish, were "administrative" or "ministerial" in nature, and whether the alleged "wrongdoing will only have repercussions that reverberate locally."

Review of the briefing on these issues shows the parties have presented this Court with several alternative scenarios regarding actions that *might* be taken by the state courts should the instant case be remanded. This Court finds such arguments are speculative. This Court will not attempt to predict what a state court *might or might not do* – pursuant to state law – in deciding whether amendment of a pleading should be permitted under federal law. Thus, this Court will not undertake an analysis of the long line of ever-evolving Louisiana cases that address the proper venue for lawsuits against state agencies. The issue of proper venue is a matter for the state courts should this matter be remanded and one that must be determined by the state courts after this Court has determined the appropriate course of action pursuant to federal law.[6]

---

[6] This Court notes that on August 29, 2008, while preparing this Memorandum Ruling, the Court referred to the docket sheet of this matter, which showed that, due to an administrative error in the Clerk of Court's office, neither state agency was listed as a party defendant as of that date. However, after returning to chambers on September 8, 2008 following Hurricane Gustav, the docket sheet lists the "LA Department of Environmental Quality" and the "LA Department of Natural Resources" as defendants. The import of the foregoing is that this Court is unaware of whether either state agency has notice of the pending appeal. Indeed, inasmuch as the state agencies have not been added as parties to this matter until very recently, the state agencies have not been heard on

In balancing the equities in this case, this Court notes both plaintiffs and defendants could be potentially prejudiced, to some degree, depending on which way this Court rules. If the amendment is permitted and the case is remanded, defendants might very well have to face a difficult choice as to an objection of improper venue. If the amendment is not permitted, however, plaintiffs will be denied their choice of forum, despite having initially filed suit in state court against two parties against whom they have stated potentially valid causes of action. Indeed, this Court notes there are *several* scenarios that could play out upon remand. In only one scenario – that in which the amendment is *not* permitted and the plaintiffs' claims against the oil and gas defendants proceed in federal court while the plaintiffs' claims against the state agencies proceed in state court – is it *guaranteed* the plaintiffs would have to prosecute their causes of action in a piecemeal fashion. In all other scenarios, there is the potential that all claims could be tried together, whether they proceed in Cameron or East Baton Rouge Parish. However, if this Court denies the amendment, plaintiffs will be forced to proceed with two separate lawsuits in two separate forums.

After balancing the equities, this Court concludes the potential prejudice to plaintiffs should the amendment be denied would be greater than the *potential* prejudice to the defendants should the amendment be permitted, in part because this Court has question as to whether defendants will actually experience the prejudice argued, as the state courts might make determinations that are acceptable to defendants or which have not yet been contemplated by defendants. Thus, this Court concludes the equities weigh in favor of permitting the amendment.

---

the issue of what position they might take on the question of remand. Therefore, it is inappropriate for the defendants to speculate as to what actions the state agencies and state courts might or might not take, as the state agencies have not been heard on the entire issue. However, this Court will, based upon the long standing preference exhibited statutorily and jurisprudentially, assume the state by way of its agencies, would prefer to respond in the state's courts, and thus will move forward at this juncture to rule on the motions at hand.

## III. Conclusion

Considering the foregoing, this Court AFFIRMS the ruling of the magistrate judge permitting the amendment of plaintiffs' complaint, with clarification, and REMANDS this matter to the 38th Judicial District Court for the Parish of Cameron, Louisiana pursuant to *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987) (if the court permits the amendment of the non-diverse defendant, it then *must* remand to the state court).

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this _17_ day of September, 2008.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE